# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RAUL GRAJEDA

       Plaintiff,

vs.                                        CIVIL NO. 06-961-MV/ACT

DR. FRANCIS J. HARVEY,
SECRETARY, DEPARTMENT OF
THE ARMY,

       Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment (Doc. No. 22, filed January 25, 2008) and Plaintiff's Motion for Leave to File Exhibits in Excess of Page Limits (Doc. No. 33, filed March 21, 2008).  The Court, having considered the motions, briefs, relevant law and being otherwise fully informed, for the reasons stated below, finds that the motions are well-taken and will be **GRANTED.**

### PROCEDURAL BACKGROUND

Plaintiff Raul Grajeda filed suit against his employer, Dr. Francis J. Harvey, Secretary, Department of the Army, alleging employment discrimination on the basis of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq.*  After the parties had completed discovery,  Defendant filed his Motion for Summary Judgment ("Motion") now before the Court.  Before addressing the merits of Defendant's Motion, the Court must first determine several preliminary issues that were raised in Defendant's Reply (Doc. No. 31,  filed March 17, 2008) regarding the exhibits that Plaintiff attached to his Response (Doc. No. 28, filed

February 25, 2008).

## I. Defendant's Motion to Strike Excess Exhibit Pages and Plaintiff''s Motion for Leave to File Exhibits in Excess of Page Limits

Plaintiff attached 114 pages of exhibits to his Response to Defendant's Motion for Summary Judgment. The District of New Mexico's Local Rule 10.5 limits exhibits to fifty pages unless all parties agree otherwise. In his Reply, Defendant moved the Court to strike all exhibits exceeding the fifty page limitation because Plaintiff did not seek concurrence from Defendant and did not file a motion seeking leave to exceed the page limit. (Reply at 1).

Plaintiff then filed a motion for leave to file in excess of fifty pages. (Doc. No. 33, filed March 21, 2008). Plaintiff states the "length of the exhibits was necessary to properly respond to the issues involved in this Defendant's Motion for Summary Judgment" and that "Plaintiff's counsel inadvertently overlooked the exhibit page limit." (*Id.* at 2). Plaintiff admits that he should have filed his motion to exceed the page limit prior to the time he filed his Response. (*Id.*).

Defendant argues that Plaintiff's motion for leave to file in excess of fifty pages is untimely and that Plaintiff must show excusable neglect to obtain an extension of time after the deadline for filing has expired. (Doc. No. 36 at 2, filed April 7, 2008). When an act must be done within a specified time, the Court may, with good cause, extend the time "on motion after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(1). Defendant concludes that Plaintiff's motion should be denied because Plaintiff's counsel's inadvertence does not satisfy the excusable neglect requirement. (Doc. No. 36 at 2).

"[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not constitute excusable neglect for purposes of Rule 6(b)." *Quigley v. Rosenthal*, 427

2

F.3d 1232, 1238 (10th Cir. 2005).  However, in "determining whether a movant seeking additional time has shown excusable neglect, courts consider the danger of prejudice to the opposing party, the length of the delay and its potential impact on judicial proceedings, the reason for delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Sizemore v. State of New Mexico Dep''t of Labor*, 2006 WL 1704456 *3 (10th Cir.) (*quoting Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.*, 507 U.S. 380, 395 (1993).  Defendant does not argue that he is prejudiced by the untimely filing.  The length of delay in filing the motion is about one month and did not impact the judicial proceedings.  Although the reason for the delay is inadvertence or ignorance of the rules, there is no indication that the reason for the delay was Plaintiff's bad faith.  The Court will, therefore, grant Plaintiff's Motion for Leave to File Exhibits in Excess of Fifty Pages (Doc. No. 33, filed March 21, 2008).  *See Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1494 (10th Cir. 1995) (finding district court did not abuse its discretion in permitting defendants to file answers out-of-time where the record demonstrates that the late filings were due to mistake, inadvertence or carelessnesss and not to bad faith on defendants' part).  The Court will deny Defendant's motion to strike the excess exhibit pages.

## II. Defendant's Motion to Strike Exhibit 22

Plaintiff attached Exhibit 22 to his Response to Defendant's Motion for Summary Judgment.  Exhibit 22 is Plaintiff's affidavit, signed October 11, 2004, which was filed in another federal court case against the same defendant in this case.  In his Reply, Defendant moved the Court to strike Exhibit 22 on the basis that Plaintiff did not disclose the existence of the document per Fed. R. Civ. P. 26(a).

Fed. R. Civ. P. 26(a)(1)(ii) provides that a party must provide to other parties a copy of all

documents that the disclosing party has in its possession and may use to support its claims.  A party who has made a disclosure must supplement the disclosure in a timely manner if the party learns that the disclosure is incomplete.  Fed. R. Civ. P. 26(e).  If a party fails to provide information as required by Rule 26(a) or (e), "the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or harmless."  Fed. R. Civ. P. 37(c)(1).

Plaintiff argues that Exhibit 22 shows Plaintiff's protected Title VII activity and is "in direct response to Defendant's Motion for Summary Judgment."  (Doc. No. 33 at 2-3, filed March 21, 2008).  Plaintiff also states that he "will amend Plaintiff's disclosures."(*Id.*).  Plaintiff makes no argument that his failure to disclose Exhibit 22 was substantially justified or harmless.  Plaintiff cites no legal authority to support his argument against striking Exhibit 22.

Defendant claims, and Plaintiff does not dispute, that "Plaintiff never disclosed Exhibit 22 as a document that he intended to use to support his claims; nor did he ever supplement or amend his initial disclosures to identify the document.  [Exhibit 22] was identified for the first time in Plaintiff's Response to Defendant's motion for Summary Judgment."  (Doc. No. 36 at 4, filed April 7, 2008).  In his deposition, Plaintiff identified his 2002 testimony as the protected activity that allegedly motivated Defendant to retaliate against him and did not identify Exhibit 22. (Doc. No. 36 at Ex. 1, filed April 7, 2008).

The Court will strike Exhibit 22.  Plaintiff did not identify Exhibit 22 in his initial disclosure, did not supplement his disclosure, and did not demonstrate that his failure to disclose Exhibit 22 was substantially justified or harmless.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Medical Assistance Plan*, 169 F.3d 1287, 1290 (10th Cir. 1999). Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993).  Once the moving party meets its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue  for trial," Fed.R.Civ.P. 56(e), "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs.,Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citations omitted).  The non-moving party's burden may not be satisfied by "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Warfield v. Byron*, 436 F.3d 557 (5th Cir. 2006).   Rather, the non-moving party is required to "go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific  facts showing there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

The Court "must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Simms. v Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv*., 165 F.3d 1321, 1326 (10th Cir. 1999). The ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I. Undisputed Facts

Plaintiff does not dispute the following facts. (Pl. Response Memo at 1-4).

Plaintiff is currently employed as a GS-12 General Engineer by the Department of the Army at White Sands Missile Range ("WSMR"). (Def. Memo at 3, Fact 1).

In August 2002, Plaintiff testified at a hearing before the Merit Systems Protection Board ("MSPB") in the case of *Bobby D. Gallegos v. Department of the Army*, Docket Number DE-0432-02-0202-I-1. (*Id.* Fact 2). In *Gallegos*, the appellant filed a "mixed case appeal" with the MSPB, challenging his removal from federal service for performance based reasons. (*Id.* Fact 3). He also raised numerous affirmative defenses, claiming, among other things, that his removal was motivated by unlawful discrimination. (*Id.*).

On February 19, 2003, the MSPB issued its Initial Decision affirming the Army's removal of the appellant from federal service. (*Id.* Fact 4). On March 26, 2003, Gallegos filed a complaint in district court appealing the MSPB's decision: *Gallegos v. White*, USDC, DNM, Civ. No. 03-384. (*Id.*). The *Gallegos* case came to trial on the merits in late May 2005 before the Honorable Leslie Smith. (*Id.*). Plaintiff testified in the *Gallegos* case on or about May 25, 2005. (*Id.* Fact 5).

In 2004, Joe Chavez ("Chavez") served as the Director of the Materiel Test Directorate ("MT"). Richard Martinez ("Martinez"), served as Deputy Director, MT, and was Plaintiff's third level supervisor.   (*Id.* at 4, Fact 6).  Plaintiff's immediate supervisor was Jeffrey Dallman ("Dallman").  (*Id.*).  Plaintiff's second level supervisor was Andrus Garay ("Garay").  (*Id.*).

On March 1, 2004, Howard Bennett ("Bennett"), a GS-13 Materials Engineer, retired from WSMR.  (*Id.* Fact 7).  After Bennett retired, WSMR restructured his position, converting it to an entry level, intern position. (*Id.* Fact 8).  At that time, Plaintiff began performing many of the duties previously performed by Bennett (*Id.* Fact 9).

On October 25, 2004, Chavez submitted a Request for Exception to the Hiring Freeze to WSMR's Hiring Control Panel ("HCP"), requesting approval to promote Plaintiff.  (*Id.* Fact 11). On October 27, 2004, the HCP approved the request subject to the condition that no other Branch employees were qualified for the position as determined by WSMR's Civilian Personnel Advisory Center ("CPAC"). (*Id.*)  The HCP decided that if there were other employees qualified for the position, the position would have to be filled competitively. (*Id.*)

On or about February 10, 2005, Chavez authorized the submission of a Request for Personnel Action to the Civilian Personnel Operations Center ("CPOC") in Fort Huachuca, Arizona, requesting cancellation of Plaintiff's position, Materials Engineer GS-806-12, and establishing a new position within the Directorate, Materials Engineer GS-806-13, to be filled competitively. (*Id.* at 5, Fact 13). In February 2005, the Army issued a vacancy announcement for the newly established position. (*Id.* Fact 14).   Plaintiff and David Garcia ("Garcia"), an Army Civilian employee based in Corpus Christi, Texas, applied for the position. (*Id.* Fact 15).  On March 14, 2005, CPOC generated a Web Based Referral List, identifying Plaintiff and Garcia as qualified applicants for the position.  (*Id.*

Fact 16).  Dallman was designated the selecting official for the position.  (*Id.* Fact 17).  Dallman appointed a two person committee, consisting of Dr. Joseph Gomez ("Gomez"), a Chemist, and Jose Bejarano ("Bejarano"), a Supervisory Electronics Engineer, to rate each applicant's resume and to conduct interviews if necessary.  (*Id.* at 6, Fact 18).  The committee met on March 23, 2005 and rated the applicant's resumes.  (*Id.* Fact 19).  Out of a possible 80 points, Garcia was awarded 70.5 points, and Plaintiff was awarded 53 points.  (*Id.* Fact 19).  The committee concluded that Garcia was the superior applicant, declined to conduct interviews, and recommended that Garcia be selected to fill the position. (*Id.* Fact 20). Neither Gomez nor Bejarano were aware that Plaintiff had testified before the MSPB in August 2002.  (*Id.* Fact 21).   Dallman subsequently interviewed both candidates. (*Id.* Fact 23).  Although Plaintiff scored higher on the interview, his combined score (109) was lower than Garcia's combined score (119.5). (*Id.*).  Dallman selected Garcia for the position.  On March 30, 2005, Garay concurred in Dallman's decision to select Garcia for the position. (*Id.* Fact 25).

On April 19, 2005, Plaintiff learned that he had not been selected for the position. (*Id.* at 7, Fact 26).  On April 22, 2005, Plaintiff contacted an EEO counselor at WSMR. (*Id.* Fact 27).  In his EEO complaint, Plaintiff alleged discrimination on the basis of reprisal only. (*Id.* Fact 28).

**II. Disputed Facts**

Plaintiff disputes Defendant's material fact no. 10 which states that:

In October 2004 Dallman and Garay submitted a request to Chavez seeking permission to promote Plaintiff non-competitively based on an accretion of duties.

Plaintiff attempts to controvert this statement by arguing that Dallman and Garay did not "voluntarily" submit a request to Chavez.  Plaintiff states that "Garay had adamantly refused to give

the Plaintiff a promotion" and that he "went above both Dallman and Garay to Richard Martinez, in order to obtain a promotion through an accretion of duties." (Pl. Response Memo at 1).  Although Plaintiff attempts to controvert Defendant's statement of fact by characterizing Dallman's and Garay's request as involuntary,  such characterization does not controvert Defendant's stated fact that Dallman and Garay made a request to promote Plaintiff by accretion of duties.  Indeed, during his deposition, Plaintiff testified that he was not aware of any facts to controvert that Dallman and Garay made a request to promote Plaintiff.  (*See* Def. Ex. 1, Pl. depo at 84, lines 14-19, at 86, lines 14-18).   Moreover, Martinez testified that it was Dallman's and Garay's "wish" that Plaintiff be promoted non-competitively. (Def. Ex. 2, Richard Martinez OCI testimony, at 60-61).

Plaintiff disputes Defendant's material fact no. 12 which states:

Sally Smoot, CPAC, subsequently advised the HCP that in her opinion the position needed to be filled competitively because there were, arguably, other employees in the Branch qualified for the position.  At that time, Ms. Smoot was unaware that Plaintiff had testified before the MSPB in August 2002.

Plaintiff objects to this material fact on the basis that "there was never any other employee in the Branch identified that was qualified for the position." (Pl. Response Memo at 2).  By merely challenging the correctness of Smoot's opinion, Plaintiff fails to controvert that Smoot did in fact hold this opinion and that she accordingly advised the HCP that the position needed to be filled competitively.  Plaintiff also contests Defendant's assertion that Smoot was unaware that Plaintiff had testified before the MSPB in 2002.   He surmises that Smoot must have known about Plaintiff's testimony because she was actively involved in defending the Agency and that Scott Zombardi, a direct subordinate of Smoot, was present at the MSPB hearing.  As will be discussed more fully below,  Plaintiff's bald assertion, without more,  is speculative and insufficient to raise a genuine issue of material fact.

9

Plaintiff disputes Defendant's material fact no. 22 which states that:

Dallman reviewed the committee's results and concluded that the resumes were fairly evaluated.

Plaintiff contends that Dallman "would have been aware that although the selectee had a longer resume, that it was the Plaintiff's resume that clearly showed the knowledge, skills and abilities needed for the promoted position." (*Id.*)  He states that whereas "Plaintiff had remained in his position for 17 years, wherein he had been performing the necessary duties of the promoted position," the selectee had "performed none of these duties" during the "same seventeen year" period.  (*Id.*) Specifically, Plaintiff argues that Dallman never questioned why the same rater scored the selectee higher in the level of education when both the Plaintiff and the selectee had "the exact same education." (*Id.* at 3).   Plaintiff does not allege any wrongdoing or discrimination on the part of the committee members who rated the resumes. (*See* Def. Ex. 3 at 31, Plaintiff's Depo, p. 118, 13-14 ("I'm not blaming Joseph Gomez or Joe Bejarano")). Plaintiff's  position that the resumes were unfairly evaluated is inconsistent with his sworn testimony in this regard. (*See id.*)  Moreover, as will be discussed below, Plaintiff's disagreement regarding Dallman's assessment that the resumes were fairly evaluated is insufficient to raise a genuine issue of material fact.

Plaintiff disputes Defendant's material fact no. 24 which states that:

Dallman then selected Garcia based on his higher combined score.

Plaintiff attempts to controvert Defendant's material fact by arguing that the selection process was unfair.  (*See id.* at 3). Specifically he takes issue with the fact that all questions in both the resume evaluation and interview were incorrectly given equal weight. (*Id.*)  As will be discussed more fully below, Plaintiff's disagreement with the process is insufficient standing alone to controvert Defendant's material fact.

Plaintiff disputes Defendant's material fact no. 24 which states that:

In his EEO complaint, Plaintiff identified his 2002 MSPB testimony as his protected activity.

Plaintiff states that Defendant's material fact fails to recognize that he supplemented his report and amended his complaint to show that at the time he was considered for a promotion on accretion of duties, denied a promotion by accretion of duties, and then denied a competitive promotion, Plaintiff had already been identified as a witness in a Title VII federal court case. Plaintiff also states that Defendant's material fact ignores that Plaintiff was subjected to intimidation at the MSPB level and at the Federal Court level regarding his projected testimony and that Plaintiff's failure to be promoted and his subsequent EEO complaint regarding his denial of promotion was used by Defendant in federal court to imply that Plaintiff was disgruntled and/or biased. (*Id.* at 4). Plaintiff's response fails to controvert the fact that his initial EEO complaint identified his 2002 MSPB testimony as his protected activity. Moreover, the supplemental statements of fact that Plaintiff offers to controvert Defendant's material fact, are not relevant to Dallman's employment decision. Plaintiff was not identified as a witness in the federal case until April 13, 2005, almost two weeks *after* Dallman made the decision to select Garcia for the job. (*See Gallegos v. White*, DNM Civ. No. 03-384 (Doc. No. 77, filed April 13, 2005)). Therefore, his identification as a witness could not possibly have formed the basis of Dallman's decision. Likewise, Plaintiff testified at Gallegos' federal trial almost two months *after* Dallman's decision.

Although Plaintiff asserts that he was intimidated with regard to his MSBP testimony and his projected federal case testimony, he makes no allegation that Dallman, or any of the other alleged discriminating officials, intimidated him in this regard.

**III. Plaintiff's Title VII claim**

Plaintiff alleges that his immediate supervisor, Dallman, failed to promote him in retaliation for Plaintiff's testimony in favor of a co-worker before the HSPB and for his participation in his co-worker's federal case, including filing an affidavit and being named as a witness.   He contends that the ultimate decision not to promote him represented "a concerted and planned retaliatory act" on the part of his immediate supervisor Dallman, his second line supervisor, Garay, and CPAC Chief, Sally Smoot. Plaintiff's Complaint ¶26; *see also* Def. Ex. 4 at 40 (Pl. depo at 157, lines 9-14).

Title VII provides that it is **"**an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

Where as here, a Title VII Plaintiff relies on indirect or circumstantial evidence to show discrimination, the Court must examine the claim under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Pursuant to *McDonnell- Douglas*, the plaintiff first has the burden of proving by a preponderance of the evidence a *prima facie* case of retaliation.  If the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* at 802.  Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  *Id.*, at 804.  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff

remains at all times with the plaintiff.  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### A. *Prima Facie* Case of Retaliation

To establish a *prima facie* case of retaliation under Title VII, Plaintiff must show that (1) he engaged in protected Title VII activity; (2) he suffered an adverse action that a reasonable employee would have found material; and (3) there is a causal nexus between his opposition and the employer's adverse action.  *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

### (1) Protected Title VII Activity

There is no dispute that Plaintiff engaged in protected activity when he testified before the MSPB in favor of his former co-worker, Bobby Gallegos.  (Motion, Fact 29).  Such conduct constitutes "protected opposition to discrimination."  *Id.*  Plaintiff also claims that he engaged in protected Title VII activity when he filed an affidavit on behalf of Bobby Gallegos in his Title VII federal case  and when he was named as a witness in the case.   With respect to the affidavit, such activity clearly falls within the rubric of protected Title VII activity.  *See Kelley v. City of Albuquerque*, case # 2008 WL 428967 at 9 (10th Cir.) (noting examples of protected activity under the "participation clause, including defend[ing] [oneself] against charges of discrimination," involuntarily participat[ing] as a witness in a Title VII proceeding" and "actively participat[ing] in assisting a co-worker to assert her Title VII rights.").  However, the Court has struck Exhibit 22 (Pl. affidavit) for the reasons explained above and will therefore not consider it for purposes of determining the Motion before the Court.[1]

The Court declines to reach the issue as to whether Plaintiff's identification as a witness in

---

[1] The Court notes that the record is devoid of any evidence indicating that Dallman, Garay or Smoot had knowledge of Plaintiff's affidavit.

Gallegos's federal case constitutes protected conduct.  Even assuming that it does, it is not relevant to Plaintiff's Title VII claim.   Plaintiff was not identified as a witness until *after* Dallman had made the decision not to promote him.  As such, his identification as a witness could not possibly have formed the basis of Dallman's decision.

The Court finds that Plaintiff's protected activity includes only Plaintiff's testimony before the HSPB in August, 2002.

### (2) Adverse Employment Action

Defendant does not dispute that Plaintiff suffered an adverse employment action when he was denied a promotion. (Def. Memo at 9-14).  *See Burlington,* 524 U.S. at 761 (an adverse employment action constitutes "a significant change in employment status, such as hiring, firing,[or] *failing to promote* . . .")(emphasis added).

### (3) Causal Nexus

To establish a causal nexus between the protected activity and the adverse employment decision, a plaintiff must "show that the individual who took adverse action against him knew of the employee's protected activity." *Montes v. Vail Clinic, Inc*.  497 F.3d 1160, 1176 (10th Cir. 2007), *quoting Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993); *see also Petersen v. Utah Dep't of Corrections*, 301 F.3d 1182, 1189 (10th Cir. 2002) (an employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition activity);  *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("[i]f an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct.").

### a. Knowledge of Protected Activity

Sally Smoot denies that she had any knowledge of Plaintiff's HSPB testimony.  Plaintiff did not present any evidence to substantiate his speculative and conclusory allegation that Smoot must have known about Plaintiff's HSPB testimony because her subordinate, Scott Zambardi, a representative of Civilian Personnel Office Management Employee Relations, was present at a meeting between Plaintiff and Agency attorney Robert Colvin before the HSPB hearing. Smoot testified that HSPB complaints are filed with the MSPB and not with the Army's EEO office. (Def. Ex. 4 ¶ 9).  As such, this was not a matter with which she would have been involved.   Plaintiff failed to support his bald assertion with any competent evidence from which a reasonable jury could infer that Smoot was aware of Plaintiff's MSPB testimony.

Both Dallman and Garay do not dispute that they had knowledge of Plaintiff's testimony before the MSPB.  (*See* Def. Memo at 10).  However, Defendant contends that Plaintiff's MSPB testimony was too temporally remote to raise any inference of a causal connection between Plaintiff's protected activity and the decision not to promote Plaintiff.  A plaintiff may satisfy the causal nexus element of his *prima facie* case "by proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

### b. Temporal Proximity

Plaintiff engaged in protected activity in August,  2002, when he testified before the HSPB. Dallman made the decision not to promote Defendant on March 30, 2005.  (Def. Ex. 3, Dallman Memo).   Therefore, a period of <u>two and one half</u> years had elapsed between Plaintiff's testimony and the adverse employment action.

Although the Court has determined that Plaintiff failed to establish a causal nexus between Smoot's decision that the position had to be opened up competitively and Plaintiff's protected activity, the Court additionally concludes that the lapse of time between her decision and the protected activity was too great to establish a causal nexus.  Sometime between October 27 and November 10, 2004, Smoot advised the HCP that in her opinion it was necessary to open up the position competitively.   On November 10, 2004, the HCP concurred with Smoot's opinion and announced its decision accordingly.  Plaintiff claims in essence that in rendering her advice to the HCP, Smoot was acting in concert with Dallman and Garay with the unlawful goal of denying him promotion because he had engaged in protected activity.   The lapse of time between the point when Sally Smoot advised the HCP and the protected activity is approximately <u>two</u> years.    A lapse of time of two years, standing alone, is too great to raise an inference of a causal connection.  *See Stover v. Martinez*, 382 F.3d 1064 (10th Cir. 2004)(two-year lapse between the protected activity and alleged adverse action too attenuated to support an inference of causation); *Antonio v. Sygma Network, Inc.,* 458 F.3d 1177, 1182 (10th Cir. 2006) (a nine-month gap between protected activity and adverse action "too temporally remote to support an inference of causation);   *O'Neal v. Ferguson Construction Company*, 237 F.3d 1248, 1253 (10th Cir. 2001)(holding that three month period standing alone, is insufficient to satisfy causation element); *cf. Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (one and one-half month period between protected activity and adverse action, may by itself, establish causation).   Because close temporal proximity is lacking, Plaintiff must  provide the Court with "additional evidence" of a causal connection in order to survive summary judgment.  *See O'Neal*, 237 F.3d at 1253 ("unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must

offer additional evidence to establish causation").

### c. Additional Evidence

The Court finds that Plaintiff has failed to present any competent "additional evidence" from which a reasonable jury could find a causal connection between Plaintiff's protected activity before the HSPB and his denial of promotion.

Of the ten individuals, including Dallman, Garay, Smoot, Martinez, Chavez, three HCP members, and two selection committee members,  who in some way or another contributed to Plaintiff's denial of promotion,  Plaintiff only attributes a retaliatory motive to three of them: Garay, Dallman and Smoot.  In so doing,  Plaintiff theorizes that they conspired against him, acting in concert with one another, to deny him promotion in retaliation for his HSPB testimony.  (*See* Complaint, ¶ 26; Def. Ex. 3, Pl. depo at 157, lines 9-14).   The Court will analysis the roles of each of the alleged co-conspirators and determine whether Plaintiff has shown the requisite "additional evidence" to establish the causal nexus element of his *prima facie* case.

### i.Garay

At first glance, the most compelling "additional evidence" upon which to infer retaliatory motive appears to be Garay's alleged statement in December 2004 that he would "get even" with Plaintiff.  (*See* Pl. Ex. 1, Pl. Declaration, ¶ 8).   Garay denies making the statement.  (*See* Def. Ex. 6, Declaration of Garay ¶ 9).   For purposes of summary judgment, the Court will assume that Garay made the statement.  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serv.,* 165 F.3d 1321, 1326 (10th Cir. 1999) (the district court "must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party").

However, even assuming that Garay made the statement, the Court finds that it does not raise

a reasonable inference of retaliation when viewed in the context of the record and even when viewed in the light most favorable to Plaintiff.    Plaintiff provides no context for the statement.    After Garay allegedly made the statement, Plaintiff did not approach him and ask him to explain his statement.  Plaintiff does not know why Garay made the statement.  The statement was made  in December 2004, more than two years after Plaintiff's HSPB testimony.  Therefore, the statement is too temporally remote from the protected activity to raise an inference of causation. Furthermore, it was Dallman, *not* Garay, who made the decision not to promote Plaintiff.  (*See* Def. Memo at 5, undisputed material facts no. 17 and 25 ).  Garay's involvement in the selection process was limited to offering some basic guidance regarding the process and reviewing Dallman's decision. (*See* Def. Ex. 6, Declaration of Andrus Garay).  Plaintiff presents no evidence that Garay in any way controlled or otherwise influenced Dallman's decision.

Furthermore, it was Smoot, *not* Garay, whose interpretation of the accretion of duties regulation resulted in the HCP determination that the position would have to be opened up competitively.    Absent Smoot's intervention, Plaintiff would have been promoted pursuant to Dallman and Garay's request.  It makes little sense that Garay would have concurred in Dallman's request to promote Dallman and then immediately reversed course and conspired with Smoot and Dallman to deny Plaintiff his promotion.  Plaintiff has failed to present any evidence to substantiate his rather implausible conspiracy theory.  Moreover, Plaintiff has failed to present any evidence that Garay influenced Smoot's decision in any way.  Indeed,  Smoot stated under oath that she interpreted the accretion of duties regulation consistent with her standard practice and was not influenced by any other person in this regard. (*See* Def. Ex. 4, Declaration of Sally Smoot, ¶ 4). Viewing the evidence in the light most favorable to Plaintiff, the record does not support a

reasonable  inference that Garay played a determinative role in Dallman's decision not to promote Plaintiff or that he acted in concert with Smoot and Dallman.

### ii.Dallman

Dallman was the critical decision-maker who determined that Garcia, not Plaintiff should be hired for the GS-level 13 position.  That decision was then reviewed and concurred in by Garay, Martinez and Chavez.  Plaintiff alleges that Dallman treated him differently immediately following his HSPB testimony, including scrutinizing him more closely, on one occasion asking him to write a report for a mission that Plaintiff did not conduct and precluding Plaintiff from working overtime with regard to the mission report, while permitting his co-workers to work overtime. (*See* Pl. Ex. 1, Pl. Declaration, ¶ 7);*cf. Lee v. New Mexico State University Board*, 102 F.Supp. 2d 1265 (D.N.M. 2000) (pattern of retaliation, including heightened scrutiny and criticism, divergence from internal procedures, disparate treatment, adverse evaluation, negative tenure recommendation, denial of tenure, unequal rate of pay and finally termination from employment, began soon enough after plaintiff's protected opposition to satisfy plaintiff's burden of proving causation.).

Plaintiff has not provided any evidence to substantiate his allegation.  Indeed, the record indicates that Dallman continued to give Plaintiff excellent evaluations and that he did not discipline or reprimand Plaintiff during the relevant time period. (*See* Def. Ex. 3,  Declaration of Jeffrey Dallman at ¶ 12 ("both candidates had exceptional evaluations for the preceding five years")). Moreover, even assuming that Plaintiff was treated differently following his HSPB testimony, the record does not support a reasonable inference that Dallman retaliated against Plaintiff on the basis of his testimony,  in light of Dallman's *subsequent* efforts to secure Plaintiff's promotion by accretion of duties.  Plaintiff testified before the HSPB in August, 2002, and Dallman initiated

19

efforts to promote Plaintiff by accretion of duties in October, 2004.

Shortly before the retirement of Howard Bennett, Dallman suggested to Plaintiff that he would try to promote him by accretion of duties.  (*See* Pl. Ex. 1, ¶ 9, Declaration of Raul Grajeda). Upon Bennett's retirement, Plaintiff began to perform many of Bennett's duties. (*See id.*). Subsequently, in October, 2004, Dallman requested a promotion for Plaintiff by accretion of duties and after going up the chain of command, Joe Chavez, director of MT submitted a request for Plaintiff's promotion to the HCP.  (*See* Def. Ex. 6, Declaration of Garay at ¶ 7).   The request included a statement that Plaintiff "warrants a promotion due to excellent job performance and the accretion of duties." (Def. Ex. 3).

Dallman's efforts to promote Plaintiff were thwarted by the decision of the HCP.  Had it not been for the HCP decision, Plaintiff would have been promoted according to Dallman's request.  In light of these facts, Plaintiff's theory that Dallman was acting in concert with Smoot to deny Plaintiff his promotion is illogical.  Moreover, Plaintiff fails to present any evidence to substantiate his theory.

In accordance with the HCP decision, the position was opened up competitively and Dallman was assigned the job of selecting the candidate. After consulting with Garay, Dallman appointed a two person committee to rate each applicant's resume and to conduct interviews, if necessary.  (Def. Ex. 3, Declaration of Jeffrey Dallman at ¶ 8).

The criteria Dallman provided to the committee members for evaluating the resume were similar to those he had used when Bennett was hired.  (*See id.* ¶ 9).  Plaintiff submitted a one-page resume that omitted many projects he had worked on and did not describe the breadth of his experience or list the kinds of tasks he performed on a regular basis. (*See id.* ¶ 10).  On the other

hand, Garcia submitted a three-page resume containing detailed and comprehensive information regarding his over 30 years of experience as a materials engineer.  (*See* Pl. Ex. 11, Plaintiff's and Garcia's resumes) .  Although the committee declined to conduct interviews and recommended that Garcia be hired based on his superior resume, Dallman nonetheless decided to interview both of the candidates.  (*See* Def. Memo, undisputed facts nos. 20 and 23).   In the interview, he awarded Plaintiff a score of 56 and Garcia a score of 49. (*See* Pl. Ex. 13) but Garcia's total combined score was higher than Plaintiff's.  Shortly thereafter, Dallman selected Garcia for the position.  If Dallman was discriminating against Plaintiff, it makes little sense that he would have chosen to conduct an interview, when he could easily have deferred to the decision of the selection committee that Garcia was the superior candidate and that interviews were unnecessary.  Likewise, it makes little sense that he would have given Plaintiff a higher score than Garcia on his interview.  A rational jury simply could not conclude from this evidence that a causal nexus exists between Plaintiff's protected activity and Dallman's adverse employment decision.   The only reasonable inference that can be made is that the decision not to promote Plaintiff was based on the poor quality of Plaintiff's resume, rather than on Plaintiff's HSPB testimony.

### iii. Smoot

Plaintiff has failed to present any "additional evidence" sufficient to raise a reasonable inference of a causal connection between Smoot's decision that the position needed to be opened up competitively and Plaintiff's protected activity.

Even assuming that Smoot incorrectly interpreted the accretion of duties regulation, the record indicates that she did so across the board and in an indiscriminate manner.  *See Antonio*, 458 F.3d at 1182 ("although a retaliatory motive could be inferred from disparate application of

handbook policies to similarly situated employees, [plaintiff] identifies no such employees"); *cf. Lee,* 102 F.Supp.2d at 1277 (irregularities in procedure were a relevant factor in court's determination that plaintiff established causal nexus).   Plaintiff failed to present any evidence from which a reasonable jury could infer that Smoot's opinion, even if erroneous, was not sincerely held. Plaintiff's attempt to establish a causal nexus by arguing in essence that Smoot must have harbored discriminatory animus towards him because her decision was wrong, falls far short of providing the "additional evidence" needed to satisfy the causal nexus element.   His speculative and unsubstantiated allegation of a conspiracy between Smoot, Dallman and Garay, falls equally short. *See Mulhall v. Ashcroft*, 287 F.3d 543 (6th Cir. 2002)(summary judgment proper where Plaintiff offered only conspiratorial theories, not the specific facts required under the Fed. R. Civ. P. 56).

## B. Legitimate, Nondiscriminatory Reason for Adverse Employment Decision

Plaintiff failed to establish a *prima facie* case.  Defendant contends that even if Plaintiff had established a *prima facie* case, he would not be entitled to summary judgment because he cannot show that Defendant's proffered reason for its employment decision is pretextual.  The Court agrees.  Under the *McDonnell-Douglas* framework, when the plaintiff satisfies his *prima facie* case, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was denied promotion for a legitimate, nondiscriminatory reason.  *See McDonnell-Douglas,* 411 U.S. at 802*; Burdine*, 450 U.S. at 254.  The defendant need not persuade the Court that it was actually motivated by the proffered reasons.  *Burdine* at 254.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.  *Id.*   To accomplish this, the defendant must "clearly set forth, through the introduction of admissible evidence," the reasons for Plaintiff's denial of promotion.  *See id.* at 255.

22

Here, Defendant has sustained its burden.  Defendant has explained that following the HCP decision to open up the position competitively, Dallman was designated as the selecting official. (Undisputed fact no. 17).  In this capacity, Dallman appointed two committee members to review Plaintiff's and Garcia's resumes and if necessary conduct interviews of the applicants. (Undisputed fact no. 18).  Dallman set forth eight criteria by which the committee members were to evaluate the resumes, similar to those used to select Bennett for the position years earlier.  (Def. Ex. 4, Depo of Jeffrey Dallman, at 83, lines 3-10).   Garcia submitted a three-page resume replete with comprehensive and detailed information regarding his over 30 years of experience as a materials engineer.  Plaintiff submitted a one-page resume that did not contain nearly the same depth of detail and omitted specific tasks that Plaintiff had performed as a materials engineer.  Both committee members gave Garcia a higher score than Plaintiff. (Undisputed fact no. 19). After evaluating the resumes, the committee members recommended Garcia for the position and declined to conduct interviews. (Undisputed fact no.  20).   Nonetheless, Dallman interviewed both candidates and, although he gave Plaintiff a higher score on the interview than Garcia, Plaintiff's combined score (109) was lower than Garcia's (119.5). (Undisputed fact no. 23).  In explaining why Plaintiff did not get the position, Dallman stated that "[Plaintiff's] resume wasn't very good, and that's why he didn't get the job.  If he would have had a better resume, he would have gotten the job." (*See* Def. Ex.4, Depo of Jeffrey Dallman at 83, lines 3-10).

## C. Pretext

Defendant has articulated a legitimate, nondiscriminatory reason for its employment decision. The burden now shifts back to Plaintiff to establish pretext and demonstrate that the proffered reason was not the true reason for the employment decision.  To establish pretext, Plaintiff

must show that Defendant's reason is "so incoherent, weak, inconsistent, or contradictory that a rational fact finder could conclude that the reason[ ][was] unworthy of belief," *Young v. Dillon*, 468 F.3d 1243 (10th Cir. 2006), *quoting Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004), and hence "infer that  the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

Plaintiff attempts to show pretext by contending that the selection process was manipulated. Plaintiff details many reasons why he was vastly more qualified for the position than Garcia, such as the fact that he had been reading radiographic film of missiles for 17 years, a skill that he alleges comprised 80%-100% of the job, and that Garcia had not read radiographic film during the same timeframe, that Garcia was not certified to go out into the field to x-ray missiles or rockets, and Plaintiff actually had to train Garcia and assist him in reading x-rays. (Pl. Ex 1 ¶ 16).  In essence, he asserts that the process must have been manipulated because Garcia came out with more points but "doesn't know how to do the job." (Def. Ex.3 at 31, Depo of Raul Grajeda (excerpts) at 120, lines  12-14).  In  support of his contention that the process was manipulated, Plaintiff  presents a declaration from a retired WSMR electronic engineer and former supervisor avering that the scoring of resumes  can easily be manipulated to select the candidate that the deciding officials wants for the position or to discriminatorily block employees from being promoted and that he has repeatedly seen candidates who were not the best qualified, chosen because the system was so easily manipulated. (Pl. Ex. 2, ¶¶ 3 and 5).  Plaintiff also presented the testimony of Garay in which Garay stated that the scoring of resumes can be manipulated.  (*See* Pl. Ex. 19, Excerpts of Andrus Garay's Sworn Testimony-Fact Finding at 95 lines 13-21).  Although acknowledging that the process of evaluating resumes is subject to manipulation, Garay stated the following: "I watched very closely

24

that that didn't happen on his particular case, because obviously I have an EEO and I wouldn't want to be accused of doing something similar." *Id.* at 96, lines 2-7.    Plaintiff's evidence of manipulation, when viewed in the context of the record, does not raise a reasonable inference that the resume process was manipulated in *this* case.

However inadequate the selection process may have been, and however inadequate an employee Garcia may have proven to be, Plaintiff's evidence is insufficient to show that Defendant's reason is "so incoherent, weak, inconsistent or contradictory" to be "unworthy of belief." *Stover*, 382 F.3d at 1076; *see also Hill v. Steven Motors, Inc.*, 97 Fed. App'x 267, 274 (10th Cir. 2004)(arguing about the accuracy of the employer's assessment is a distraction because the question is not whether the employer's reasons for a decision are right but whether the employer's description of its reasons is honest); *Rivera v. City and County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs).

Although Plaintiff argues that he had more experience in performing the specific tasks required of the position, Garcia nonetheless had 30 years of experience as a materials engineer. Plaintiff did not establish that the difference in experience was so overwhelming as to show that Dallman's justification for hiring Garcia was pretextual. *See Sanchez v. Philip Morris*, 992 F.2d at 247 (to establish pretext, difference in qualifications must be "overwhelming"); *see also Bullington v. United Airlines, Inc.,* 186 F.3d 1301, 1319 (10th Cir. 1999)(difference in qualifications of applicants must be so apparent as "to jump off the page and slap us in the face" to support a finding of pretext), *citing Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993).

Although Plaintiff may have been a superior candidate to Garcia and  the selection process

may have been inadequate to ensure that the best person for the job would be hired, it is not for this Court to act as a "super personnel department, second-guessing [the] employer's honestly held (even if erroneous) business judgments." *Young v. Dillon Companies, Inc.*, 468 F.3d 1243 (10th Cir. 2006). Rather, the Court's "role is to prevent intentional discriminatory hiring practices." *Id.*

The evidence, even when viewed in the light most favorable to Plaintiff, does not support a reasonable inference that Dallman's decision was made on any basis other than Plaintiff's lower combined score, resulting from the significantly lower score that he received for his weak resume.

## CONCLUSION

For the aforementioned reasons, the Court concludes that, when viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that Defendant retaliated against Plaintiff in violation of Title VII.

**WHEREFORE, IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment, filed January 25, 2008 **[Doc. No. 22]**, is **GRANTED**. Judgment will be entered in favor of Defendant Dr. Francis Harvey, Secretary Department of the Army, on Plaintiff's Title VII retaliation claim;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Exhibits in Excess of Page Limits is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's Motion to Strike Plaintiff's Exhibit 22, contained in Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 31, filed March 17, 2008) is **GRANTED**.

Dated this 30th day of September, 2008.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT COURT JUDGE

Attorney for Plaintiff:
Rebecca Fisher, Esq.

Attorney for Defendant:
Michael Hoses